IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-01902-MSK-BNB

KATHLEEN S. BOWEN,

      Plaintiff,

v.

LINCOLN FINANCIAL ADVISORS CORPORATION,

      Defendant.

_____

## OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT
_____

**THIS MATTER** comes before the Court pursuant to Defendant Lincoln Financial

Advisors Corp. ("Lincoln")'s Motion for Summary Judgment **(# 43)**, Plaintiff Kathleen Bowen

("Bowen")'s response **(# 52)**, and Lincoln's reply **(# 56)**; and Bowen's Motion to Amend Her

Summary Judgment Response **(# 53)** and Lincoln's response **(# 54)**.

## BACKGROUND

The following facts are undisputed, except where noted.  In late 2001 and early 2002,

Bowen was employed as a Vice President of Colorado Brokerage Group when she became

involved in discussions with Russ Jones, Chief Executive Officer of Lincoln, about accepting new

employment with Lincoln.  After a series of negotiations, Bowen began work at Lincoln in March

2002 as a Regional Vice President in charge of recruiting, training, and coaching other financial

planners.  Pursuant to the parties' negotiations, Bowen's $ 70,000 annual salary at Lincoln

consisted of $ 40,000 in actual salary and $ 30,000 in "subsidy" payments, guaranteed for 12

months.

There is extensive dispute between the parties as to Bowen's performance in the job. Lincoln contends that, like all management employees, one of Bowen's first tasks was to master an employee training program entitled "Approach and Bridges." Lincoln contends that, despite extensive coaching and assistance, Bowen failed to demonstrate understanding and mastery of the material. As a result, Lincoln contends, Jones was forced to remove Bowen's management responsibilities and to permit her to remain only as a financial advisor and planner. In what it characterizes as a deviation from its standard practices, Lincoln nevertheless continued to make the subsidy payments to Bowen, notwithstanding her demotion. On February 27, 2003, Bowen resigned her employment.

Bowen has a different version of the events. She contends that mastery of Approach and Bridges was not a requirement of her job, and that Lincoln imposed that duty upon her only "after-the-fact,"[1] and did not require other members of Lincoln's management to master the program. In addition, she contends that she did indeed master the program, receiving acknowledgment from Lincoln's Managing Director Jim Morris and using the program to successfully train employee Charles Wernig. She alleges that her demotion in August 2002 was not because of her performance, but because of Jones' vague statements regarding a "lack of

---

[1]It is not clear what the "fact" is in Bowen's assertion that the program was imposed "after-the-fact." She does not cite to a deposition excerpt or other record in the evidence that explains this characterization. In the context of her brief, the claim that the program was imposed "after-the-fact" is followed by an assertion that mastery of Approach and Bridges "is not set forth in any of the documentation or correspondence regarding the position . . . There was no job description." *Docket* # 52 at 4. From this, the Court interprets Bowen's assertion that mastery of Approach and Bridges was imposed "after-the-fact" to mean that it was not discussed during negotiations for her hire, but was presented to her as a job responsibility at the time she began work. The Court does not interpret Bowen's assertion to mean that she was initially told that mastery of Approach and Bridges was inessential, and that Lincoln later changed its position as to the program's importance.

confidence" in her.

Bowen commenced this action alleging three claims: (i) sex discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; (ii) false representation, apparently under Colorado law, in that Lincoln misrepresented to her in pre-employment negotiations that it intended her to be a management employee when, in fact, it intended her to serve only as an ordinary financial planner; and (iii) promissory estoppel, also apparently under Colorado law, and also apparently arising from Lincoln's promise that she would be a management employee, not an ordinary financial planner.

Lincoln moves for summary judgment on all three of Bowen's claims.  It contends that: (i) Bowen cannot establish a *prima facie* claim of sex discrimination because she cannot establish that she was satisfactorily performing in her position at the time of her demotion; (ii) she cannot establish that the non-discriminatory reason given by Lincoln for her demotion– failure to master Approach and Bridges– is pretextual; (iii) she cannot establish any false statement made by Lincoln, nor that any false statement which was made was material; and (iv) she cannot establish that she relied on any promises by Lincoln, nor that injustice would result if any such promises were not enforced.

A week after Bowen filed her response to Lincoln's summary judgment motion, she filed a Motion to Amend **(# 53)** her response to include missing pages that had been intended to be submitted as exhibits and which were cited in the response, but which had not actually been attached to the response.  She also sought to substitute copies of deposition transcripts with the relevant portions underlined for the un-highlighted versions that had been initially submitted. Lincoln opposed this request, primarily based on the argument that the amended submission

coincided with the date on which Bowen had requested an extension until to file her response, but which the Court had denied.  In addition, Lincoln argued that the replacement of ordinary deposition passages with highlighted ones "is tantamount to presenting additional argument before the Court, and is neither required nor suggested by this Court's practice standards." Notably, Lincoln did not dispute that all of the mistakenly omitted and newly highlighted exhibits Bowen sought to tender were, in fact, cited in her response brief.[2]

## JURISDICTION

The Court has subject-matter jurisdiction over Bowen's Title VII claim pursuant to 28 U.S.C. § 1331.  It exercises supplemental subject-matter jurisdiction over her false representation and promissory estoppel claims pursuant to 28 U.S.C. § 1367.

## ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©; *Celotex Corp. v. Cattret*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F. 3d 567, 569 (10th Cir. 1994); *see also In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F. Supp.2d 1106 (D. Colo. 2002). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or

---

[2]Bowen's Motion to Amend is granted.  Although the Court would likely decline a request to amend a response inn order to submit new, previously uncited evidence, Lincoln is in no way prejudiced by an amendment to Bowen's response. It merely attaches inadvertently omitted pages or replaces unannotated exhibits with copies that clearly identify the relevant content.  The argument that tendering highlighted copies of previously-tendered exhibits "is tantamount to additional argument" borders on frivolous.

conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv SAP, Inc*., 210 F. 3d 1132 (10th Cir. 2000); *Carry v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).   A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248.  The court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l General Ins. Co.,* 817 F. 2d 83, 85 (10th Cir. 1987); *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co*., 52 F.3d 1522, 1527 (10th Cir. 1995); *Grayson v. American Airlines, Inc.*, 803 F. 2d 1097, 1101 (10th Cir. 1986).

The analysis to be applied differs depending on whether the moving party is also the party with the burden of proof at trial.  Here, Lincoln challenges the Bowen's ability to carry her burden of proof to establish the elements of her claims.  When the non-movant bears the burden of proof at trial, the non-movant may not simply rest on her pleadings, but must affirmatively present competent evidence to establish a genuine issue of fact with respect to every challenged element of her claim. *Ribozyme*, 209 F.Supp.2d at 1111; *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).

### B.  Discrimination claim

Claims of discrimination under Title VII are examined under the familiar *McDonnell-Douglas* burden-shifting formula.  To prove a claim of sex discrimination under Title VII, Bowen must first establish a *prima facie* case that: (i) she is a member of a protected class; (ii) that she was qualified for and satisfactorily performing the position she occupied; (iii) that she suffered an adverse employment action; and (iv) that such adverse action occurred in circumstances giving

rise to an inference of discrimination.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993); *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir.2004); *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1416-17 (10th Cir.1993).   If Bowen successfully carries this burden, Lincoln must produce a legitimate, non-discriminatory reason for its actions, and Bowen must then prove that the proffered reason is pretextual.  *Id.*

Lincoln contends that Bowen cannot establish the second element of the *prima facie* case: that she was qualified and satisfactorily performing her position.  The precise contours of this element of the *prima facie* case are the subject of much confusion.  Where an employer contends that it took an adverse action against an employee based on the employee's allegedly poor performance, defense counsel often seek summary judgment based on the employee's inability to establish the second element of the *prima facie* case, arguing that the employee was not satisfactorily performing the job.  However, this approach conflates the *prima facie* case with the ultimate question of whether the employer's non-discriminatory reason for the adverse action– performance problems– is pretextual, and needlessly heightens what is sometimes referred to as the "*de minimus*" burden of establishing a *prima facie* case.  *See e.g. Abrahamson v. Board of Education*, 374 F.3d 66, 72 (2d Cir. 2004).  Cognizant of this problem, the 10th Circuit has fashioned a remedy that allows an employee to satisfy the element by coming forward with evidence that she continued to possess the objective qualifications she held when hired, with evidence that she had held the position in question for a significant period of time, or with her own testimony that her work was satisfactory, even if that testimony is disputed by the employer.  *MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1121 (10th Cir. 1991); *see also EEOC v. Horizon/CMS Heathcare Corp.*, 220 F.3d 1184, 1192 (10th Cir. 2000) ("When

an employee's failure to meet objective, employer-imposed criteria is one of the legitimate, non-discriminatory reasons advanced by an employer to dispel the inference of discrimination raised by an employee at the prima facie stage, it cannot also be used to defeat the employee's prima facie case. To hold otherwise would be tantamount to collapsing the first and second stages of the *McDonnell Douglas* analysis").

In light of the minimal burden upon Bowen with regard to element two at this stage, Lincoln has focused its argument in its Reply on the pretext element. Therefore the Court will assume that a *prima facie* showing for element two has been made, and similarly focus its analysis on the pretext element.

The Court then turns to Lincoln's contention that Bowen cannot show that its legitimate, non-discriminatory reason for her demotion – namely, her inability to master Approach and Bridges – is a pretext for sex discrimination. Pretext is usually shown in one of three ways: (i) with evidence that the employer's stated reason for the adverse employment action was false; (ii) with evidence that the employer acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (iii) with evidence that the employer acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the employee. *Kendrick v. Penske Transportation Svcs. Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). Bowen has asserts that Lincoln's accusation that she failed to master Approach and Bridges is false, and that Lincoln's actions are inconsistent with its past practices regarding Approach and Bridges.

Turning first to the issue of whether Lincoln deviated from its past practices, the Court finds that Bowen has failed to come forward with sufficient evidence that, even when taken in the

light most favorable to her, Lincoln treated other employees differently with regard to mastering Approach and Bridges.  For example, Bowen contends that "Approach and Bridges was [not] required for management staff."  She does not, however, cite to any evidence in the record in support of this assertion, and Lincoln points to evidence indicating that several management employees, including Scott Stillman, Jennifer Tolman, and Kristy Jordan were required to master the program.

Bowen also contends that Lincoln's assertion that she did not satisfactorily master Approach and Bridges is false. For example, Bowen asserts that "Approach and Bridges was not an essential requirement for her position as Regional Vice President."  However, she cites only to her own deposition in support of this argument.  There she opines that Approach and Bridges was "not a definite requirement" for her position.  Her assertion is conclusory, however, and does not serve to rebut Lincoln's contention that it expected Bowen to master Approach and Bridges as a requirement of her employment as a manager.  Like subjective perceptions as to the sufficiency of performance, an employee's subjective assessment of which job functions are "essential"  and which are not is generally insufficient to overcome the employer's right to make that determination.  *See e.g. Furr v. Seagate Technology*, 82 F.3d 980, 988 (10th Cir. 1996) (employer's perception of employee's performance is relevant, not employee's own subjective perception).  Absent evidence that suggests that Lincoln did not consider Approach and Bridges to be an essential requirement of Bowen's position, Bowen fails to demonstrate that Lincoln's reason for her demotion was false.

Bowen also contends that she did master the Approach and Bridges material.  She contends that she successfully presented the material to Morris, Lincoln's Managing Director, in a

meeting in July 2002.  When asked at her deposition whether Morris told her he was pleased with

how she performed on Approach and Bridges, she responded that he did.  *Docket* # 52, Ex. A at

143-44.  In an e-mail message by Bowen to Morris in July 2002, she reports that she was

"finishing up on the approach and final bridges," and Morris responded that Bowen "seem[ed]

focused exactly where you need to be."  In his deposition, Morris stated that "she had learned this

little part of the approach talk that she was expected to learn, so I didn't see any reason to be

terribly concerned about that."  *Docket* # 44, Ex. A-5 at 25.  Although Morris noted that the

Approach and Bridges program had several sections and that, by only demonstrating mastery of

one part, Bowen was "way behind the curve in terms of what she needed to be able to do to

perform the job," he also testified that he was satisfied that Bowen had "made some progress,"

and that as a result, he did not discuss other performance concerns.  *Id.* at 26.  Based on the fact

that, four months into Bowen's employment, Morris considered Bowen to have learned the part

of Approach and Bridges that "she was expected to learn," and that she had made sufficient

progress that he did not see the need to discuss other concerns about her mastery of the material,

a jury could find that Lincoln's explanation that Bowen was demoted a month later for failing to

master Approach and Bridges is untrue.[3]  Accordingly, there is a triable issue of fact as to whether

Lincoln's tendered non-discriminatory reason for Bowen's demotion was pretextual.

---

[3]This is not to say that a jury will necessarily decide the issue.  Lincoln has come forward
with strong evidence that numerous individuals criticized Bowen's performance regarding
Approach and Bridges.  Morris' endorsement of Bowen's efforts at mastering the program is
severely qualified.   Although Bowen survives summary judgment, she does so by a very narrow
margin, with no assurance that she will survive a motion pursuant to Fed. R. Civ. P. 50(a) at the
close of her case at trial.

### C.  False representation/Promissory estoppel

Lincoln seeks summary judgment against Bowen on her false representation and promissory estoppel claims, asserting that Bowen cannot establish any actual representations made during her recruitment that were either false or not performed as promised.  Bowen responds that both claims are based on promises made by Lincoln that she would exercise managerial duties, when, in fact, Lincoln intended to have her perform the duties of an ordinary agent.

There is some evidence in the record that Bowen was promised that her job would consist primarily of managerial duties.  In her deposition, she was asked "did Mr. Jones also make promises about what exactly you would do as regional vice president," to which Bowen replied "Yes, there was an understanding that I was hired to recruit, select, train and grow the planner revenue pool."  *Docket* # 52, Ex. A at 204.  In contrast, Lincoln witnesses testified that they considered her to be employed "first and foremost" as an agent, with minimal management responsibilities.  *See e.g. Docket* # 52, Ex. 16 at 51 (Jones deposition).  Taken in the light most favorable to Bowen, this evidence presents a triable issue as to whether Lincoln falsely represented the extent of her intended job duties and/or promised her job responsibilities that it did not ultimately deliver.

In its reply, Lincoln does not challenge whether the cited evidence is sufficient to establish claims of false representation or promissory estoppel.  Instead, it argues that although it hired Bowen to fulfill a specific management need and treated her in many respects like a management employee, Bowen frustrated that purpose by failing to learn Approach and Bridges.   This, of

course, is a trial defense to claims for misrepresentation or promissory estoppel, not a basis upon which Lincoln can obtain summary judgment.

<u>**CONCLUSION**</u>

For the foregoing reasons, Lincoln's Motion for Summary Judgment **(# 43)** is **DENIED**.

Bowen's Motion to Amend Her Summary Judgment Response **(# 53)** is **GRANTED**.

Dated this 10th day of February, 2006

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge